UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUTHORIZED INTEGRATORS
NETWORK, LLC,

        Plaintiff,

v.

WIREPATH HOME SYSTEMS, LLC d/b/a
SNAP AV,

        Defendant.

Case No.

Hon.

---

Thomas M. Schehr (P54391)
Thomas H. Trapnell (P74345)
Attorneys for Plaintiff
DYKEMA GOSSETT PLLC
400 Renaissance Center
Detroit, MI 48243
(313) 568-6659
tschehr@dykema.com
ttrapnell@dykema.com

---

## COMPLAINT

Plaintiff Authorized Integrators Network, LLC ("AIN"), by its attorneys, Dykema Gossett PLLC, for its complaint against Defendant Wirepath Home Systems, LLC d/b/a Snap AV ("Snap AV" or "Defendant"), states as follows:

### PARTIES AND JURISDICTION

1.     AIN is a Michigan limited liability company with its principal place of business in Chesterfield Township, Michigan.

2. Snap AV is a North Carolina limited liability company with its principal place of business in Charlotte, North Carolina.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between a citizen of the state of Michigan, on the one hand, and a citizen of the state of North Carolina, on the other.

4. This Court has personal jurisdiction over Snap AV because this action arises out of Snap AV's systematic transaction of business within the state of Michigan.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to AIN's claims occurred in this District, a substantial part of the losses which are the subject of this action was incurred in this District, and Snap AV is subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

**A.     AIN and Snap AV Execute the Dealer Program Agreement.**

6. AIN maintains a nationwide network of consumer electronics dealers ("AIN Dealers") engaged in selling and/or installing low voltage equipment for the new homebuilder, residential retrofit, and commercial markets. AIN's dealer network is known as the AIN Dealer Program.

7. In order to market their products to AIN Dealers, consumer electronics manufacturers have the option of contracting with AIN to promote their products to AIN Dealers.

8. AIN's promotional efforts enable a manufacturer to reach a wide range of dealers and gain broad exposure for its brands and products, while alleviating the need for the

manufacturer to conduct its own searches for potential dealers and market its products directly to potential dealers. Contracting with AIN for product promotion also benefits a manufacturer because its products are marketed to potential dealers through a trusted source (i.e., AIN) with whom AIN Dealers are already familiar. Contracting with AIN also assists a manufacturer in strengthening its dealer relationships, building markets for its new products, and enhancing its reputation among consumer electronics dealers.

9. Snap AV manufactures a variety of consumer electronics products for use in residential and commercial structures, such as surveillance, media distribution, and power supply products.

10. On August 24, 2009, AIN and Snap AV executed the AIN Dealer Program Agreement, which was amended in an Amendment to AIN Dealer Program Agreement dated September 1, 2010 (collectively referred to in the singular as the "Agreement"). The Agreement is in Snap AV's possession and is not attached to this Complaint due to a confidentiality clause.[1]

11. The Agreement indicates Snap AV's desire to sell its products to dealers in the AIN Dealer Program.

12. The Agreement also indicates AIN's desire to non-exclusively promote Snap AV products to AIN Dealers.

13. The Agreement makes AIN responsible for providing Snap AV with up-to-date lists of AIN Dealers, and for non-exclusively promoting Snap AV products to AIN Dealers.

14. The Agreement does not require that AIN's promotional efforts result in Snap AV's achievement of any designated sales metrics, result in Snap AV selling its products to a

---

[1] AIN will file the Agreement with the Court subject to the entry of a mutually-agreeable protective order.

specific number of newly-added AIN Dealers from year to year, or result in an increase of Snap AV's sales revenue from year to year.

15. In exchange, Snap AV agreed to pay AIN commission payments on all sales to AIN Dealers. Snap AV's commission payments on sales made for each month are due to AIN the following month.

16. The Agreement's initial term expired on August 31, 2015, and then automatically renewed for additional periods of two years each, unless either party prevented the automatic renewal of the Agreement by giving the other party at least sixty days' prior written notice before the expiration of the then current term.

17. The Agreement can be terminated by either AIN or Snap AV if the other party fails to comply with its responsibilities under the Agreement, and if this noncompliance continues for thirty days after written notice from the other party.

18. The Agreement does not provide for termination without cause.

19. The Agreement also requires Snap AV to continue to make commission payments to AIN for Snap AV's sales to AIN Dealers for two years following the term of the Agreement.

20. The Agreement further requires Snap AV to indemnify AIN and hold AIN harmless for any loss, damage or expense suffered by AIN as the result of Snap AV's operation of its business.

21. The Agreement provides that it is to be governed and construed under Michigan law, without respect to Michigan's conflicts of laws principles.

**B.     Snap AV Enjoys Substantial Business Growth Thanks to AIN's Efforts in Promoting Snap AV's Products.**

22. AIN promoted Snap AV's products following the execution of the Agreement.

23. Among other things, AIN directed regular mailings, e-mails, and phone calls to AIN Dealer Program dealers to encourage them to purchase Snap AV products.

24. AIN also provided a link to Snap AV's website on AIN's website, displayed information about Snap AV at the annual CEDIA Convention of consumer electronics, and distributed Snap AV materials to AIN Dealer Program dealers, among other promotional efforts.

25. Snap AV's sales improved markedly following the execution of the Agreement.

26. Snap AV paid AIN commission payments of $87,676.54 in 2010, $180,087.80 in 2011, and $224,835.60 from January through November 2012.

### C. Snap AV Threatens to Terminate the Agreement, Despite AIN's Continuing Promotional Efforts.

27. On November 20, 2012 – while Snap AV was in the midst of its third consecutive year of record sales revenue – Craig Craze, Snap AV's CEO, sent a one-page letter to AIN declaring that "[b]ased on our sales data and other information, Snap AV believes that AIN is in breach of this obligation [i.e., the obligation to non-exclusively promote Snap AV products] under the Agreement. Accordingly, Snap AV hereby gives notice of the breach and demands that it be cured within thirty (30) days. If the breach is not cured within that period, Snap AV intends to terminate the Agreement and pursue all appropriate legal remedies." The letter made no mention of any data or observations forming the basis of Snap AV's assertion of breach.

28. AIN responded to Snap AV's letter on November 29, 2012, to express AIN's surprise at Snap AV's claim that AIN had breached the Agreement. AIN pointed out that Snap AV's sales had increased markedly since the execution of the Agreement, and listed several methods by which AIN was continuing to promote Snap AV's products.

29. AIN further advised Snap AV that "[t]here is no requirement in the Agreement that AIN meet any particular sales requirements or that sales must increase year to year. Yet

sales have increased substantially. Any action taken by Snap AV to terminate the agreement would be a breach by Snap AV and subject it to substantial damages."

30. In a December 19, 2012 response, Snap AV did not point to any action or inaction by AIN which Snap AV claimed to be a breach of AIN's duties to promote Snap AV's products to AIN Dealers. Further, Snap AV did not dispute that the Agreement does not require AIN's promotional activities to result in Snap AV's achievement of specified sales numbers.

**D.    Snap AV Defaults On Its Payment Obligations and Breaches the Agreement.**

31. Snap AV failed to pay AIN the commission from Snap AV's December 2012 sales, which payment was due on January 25, 2013.

32. Snap AV has ignored inquiries from AIN seeking to determine when and if Snap AV intends to make the commission payments due for Snap AV's December 2012 sales, and whether Snap AV intends to make other commission payments required by the Agreement.

33. Snap AV has wrongly attempted to terminate the Agreement.

34. Snap AV has breached the Agreement.

35. AIN is entitled to damages as a result of Snap AV's breach.

**COUNT I**
**(Breach of Contract)**

36. AIN incorporates by reference all prior paragraphs as if fully set forth herein.

37. The Agreement between AIN and Snap AV is a valid, binding and enforceable contract.

38. AIN has performed and continues to perform its obligations under the Agreement at all relevant times.

39. Snap AV materially breached the Agreement by failing to pay AIN the commission payments due on Snap AV's sales of its products to AIN Dealers.

40. Snap AV materially breached the Agreement by wrongly attempting to terminate it without justification.

41. Snap AV materially breached the Agreement despite AIN's compliance with all of its obligations and responsibilities under the Agreement.

42. AIN has suffered damages and will continue to suffer damages as the result of Snap AV's breach and attempt to terminate the Agreement. The amount of commissions to which AIN is entitled under the Agreement exceeds $1.5 million.

WHEREFORE, AIN requests that the Court enter judgment in its favor and against Snap AV, together with interest, costs and attorneys' fees, and grant such other and further relief as the Court deems necessary and just.

## COUNT II
### (Express Contractual Indemnification)

43. AIN incorporates by reference all prior paragraphs as if fully set forth herein.

44. The Agreement requires Snap AV to indemnify and hold AIN harmless for any loss, damage or expense caused by Snap AV's operation of its business.

45. Snap AV has operated its business so as to cause AIN to incur damages, losses, and expenses as set forth above.

46. AIN has suffered damages and will continue to suffer damages caused by Snap AV's operation of its business in an amount exceeding $1.5 million.

WHEREFORE, AIN requests that the Court enter judgment in its favor and against Snap AV, together with interest, costs and attorneys' fees, and grant such other and further relief as the Court deems necessary and just.

### COUNT III
### (Declaratory Judgment)

47. AIN incorporates by reference all prior paragraphs as if fully set forth herein.

48. There is an actual controversy between the parties regarding Snap AV's obligation to pay commissions to AIN for the remaining term of the Agreement, as well as post-termination commissions.

49. Pursuant to 28 U.S.C. § 2201, this Court has jurisdiction to declare the rights and obligations of the parties under the Agreement.

50. The Court should declare that Snap AV is obligated to pay AIN commissions for the remaining term of the Agreement, and all post-termination commissions required under the Agreement, in an amount exceeding $1.5 million.

WHEREFORE, AIN requests that the Court enter judgment in its favor and against Snap AV, together with interest, costs and attorneys' fees, and grant such other and further relief as the Court deems necessary and just.

### COUNT IV
### (Violation of Michigan Sales Representative Act, MCL 600.2961)

51. AIN incorporates by reference all prior paragraphs as if fully set forth herein.

52. Snap AV contracted with AIN for AIN to solicit orders of Snap AV's goods from AIN Dealers.

53. The Agreement between Snap AV and AIN requires Snap AV to pay AIN commissions on Snap AV's sales of its products to AIN Dealers, in return for AIN's activities as a sales representative.

54. The relationship between AIN and Snap AV is governed by Michigan's Sales Representative Commission Act, MCL 600.2961. Snap AV is a "principal" and AIN is a "sales representative" within the meaning of MCL 600.2961.

55. Snap AV has intentionally failed and refused to pay AIN the commissions due under the Agreement at the time they were due.

56. AIN has suffered actual damages as the result of Snap AV's intentional failure to pay AIN commissions when due.

57. Snap AV's intentional failure to pay AIN commissions when due entitles AIN to a judgment in the amount of its actual damages; plus an amount equal to two times the amount of the commissions due but not paid or $100,000, whichever is less; plus attorneys' fees and court costs under MCL 600.2961.

WHEREFORE, AIN requests that the Court enter judgment in its favor and against Snap AV, together with interest, costs and attorneys' fees under MCL 600.2961, and grant such other and further relief as the Court deems necessary and just.

Date: February 1, 2013                    DYKEMA GOSSETT PLLC

                                          By:/s/ Thomas H. Trapnell
                                          Thomas M. Schehr (P54391)
                                          Thomas H. Trapnell (P74345)
                                          *Attorneys for Plaintiff*
                                          400 Renaissance Center
                                          Detroit, MI 48243
                                          (313) 568-6659

DET01\1184918.5
ID\THTR - 087221\0999