**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

AUTHORIZED INTEGRATORS
NETWORK, LLC,

    Plaintiff,

v.                                                Case No. 13-10414

WIREPATH HOME SYSTEMS, LLC,
d/b/a SNAP AV,

    Defendant.
                                             /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS COUNTS II AND IV**

Defendant Wirepath Home Systems, LLC, d/b/a Snap AV, ("Snap AV") ceased making commission payments to Plaintiff Authorized Integrators Network, LLC, ("AIN") pursuant to an agreement whereby AIN would non-exclusively promote Snap AV's consumer products to AIN's dealers in exchange for a commission on the sale thereof. AIN sued for breach of contract, contractual indemnification, and violation of the Michigan Sales Representative Commission Act, Michigan Compiled Laws § 600.2961. Snap AV moves to dismiss AIN's indemnification (Count II) and § 600.2961 (Count IV) claims under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the court will deny the motion as to Count II and grant the motion as to Count IV.

**I. BACKGROUND**

AIN maintains a nationwide network of consumer electronics dealers ("AIN Dealers"), and Snap AV is a consumer electronics manufacturer. On August 24, 2009, AIN and Snap AV executed an AIN Dealer Program Agreement (the "Agreement").

Pursuant to the Agreement, AIN agreed to non-exclusively promote Snap AV's products in exchange for a commission on all Snap AV products sold to AIN Dealers.  (Dkt. # 23 at Pg ID 261-62 ¶¶ 2-3.)  The Agreement did not require that AIN's promotional efforts result in a specific increase in Snap AV's sales revenue from year to year.  (*See* Dkt. # 23 at Pg ID 261-265.)  The Agreement's initial term was five years.  (*Id.* at Pg ID 261 ¶ 1.)  Either AIN or Snap AV could, if the other party failed to comply with its responsibilities under the Agreement, terminate the Agreement if the noncompliance continued after thirty days written notice.  (*Id.* at Pg ID 263 ¶ 10.)

On November 20, 2012, approximately three years into the Agreement's initial term, Snap AV sent a letter notifying AIN that Snap AV believed AIN to be in breach of its obligations under the Agreement and demanding cure within thirty days.  (Dkt. # 23 at Pg ID 270.)  The letter expressed Snap AV's intent to terminate the Agreement if AIN did not cure within thirty days.  (*Id.*)  AIN responded, claiming that it had fulfilled its obligations under the Agreement and that any action on the part of Snap AV to terminate the Agreement would be a breach thereof.  (Dkt. # 23 at Pg ID 273.)  On December 19, 2012, thirty days after its initial notice of breach, Snap AV sent a second letter stating:

> [I]t is Snap AV's firm conviction that AIN has breached its duty under the Agreement to promote Snap AV's products and pricing programs. . . .  Snap AV is no longer willing to continue with the Agreement under its current terms and arrangements.  Accordingly, unless we are able to reach a prompt, effective resolution of this problem, Snap AV will have no choice but to terminate the Agreement.

(Dkt. # 23 at Pg ID 277.)  AIN alleges that, following the letter, Snap AV failed to pay commission on the sale of Snap AV products to AIN Dealers for the months of

December 2012, January 2013, and February 2013. AIN contends that its efforts to contact Snap AV about the commission payments were ignored.

On February 1, 2013, AIN sued Snap AV alleging breach of contract, contractual indemnification, and violation of the Michigan Sales Representative Commission Act ("MSRCA"). Mich. Comp. Laws § 600.2961. Snap AV moves to dismiss AIN's indemnification (Count II) and MSRCA (Count IV) claims under Rule 12(b)(6).

## II. STANDARD

A complaint may be dismissed under Rule 12(b)(6) when the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint "does not need detailed factual allegations," but "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005). In doing so, the court must "draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Yet the court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 466 (6th Cir. 2000). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations. *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

"[T]he court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

### III. DISCUSSION

#### A. Count II: Contractual Indemnification

Under Michigan law, "[a]n indemnity contract is to be construed in the same fashion as other contracts." *Zahn v. Kroger Co.*, 764 N.W.2d 207, 210-11 (Mich. 2009). "All contracts, including indemnity contracts should be construed to ascertain and give effect to the intentions of the parties and should be interpreted to give reasonable meaning to all of its provisions." *Id.* AIN and Snap AV contest the intent and meaning of the indemnification provision of the Agreement, which reads, in pertinent part:

> [Snap AV] shall indemnify, defend and hold [AIN] . . . harmless from and against any loss, claim, suit, action, proceeding, liability, damage or expense (including reasonable attorneys fees and costs) which [AIN] may suffer, sustain or become subject to, as a result of (i) [Snap AV's] operation of its business, (ii) any alleged breach by [Snap AV] of any of its standard terms and conditions and (iii) arising out of claims, suits, actions or proceedings by customers based on failure of the Products by reason of design or manufacture.

(Dkt. # 23-2 at Pg ID 263 ¶ 12.)

AIN argues that the Agreement's indemnification provision is not limited to third-party claims, but instead that the intent of the Agreement was to indemnify AIN for any loss, damage, or expense caused by Snap AV's "operation of its business." (Dkt. # 14 at Pg ID 76 ¶¶ 43-46.) Accordingly, AIN argues that Snap AV's alleged wrongful termination of the Agreement and failure to pay commissions are operations of Snap

AV's business that caused AIN to sustain a loss, and such losses are covered by the plain language of the indemnification provision.

Snap AV contends that AIN's interpretation of the indemnification provision is unreasonable because the provision indemnifying AIN for losses arising out of Snap AV's "operation of its business" was not meant to be an unqualified grant of indemnity for any action on the part of Snap AV. Instead, Snap AV argues that references to Snap AV's products in the indemnification provision indicate that the provision was intended to apply only to claims, suits, or actions brought by third parties and arising out of the design or manufacture of Snap AV's products. (*See* Dkt. # 19 at Pg ID 175-76.)

Both AIN and Snap AV articulate plausible interpretations of the Agreement's indemnification provision. Under Michigan Law, "[a] contract is ambiguous if the language is susceptible to two or more reasonable interpretations." *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 582, 585 (6th Cir. 2011) (quoting *D' Avanzo v. Wise & Marsac, P.C.*, 565 N.W.2d 915, 918 (Mich. Ct. App. 1997)). The ambiguity of the Agreement's indemnification provision requires the court to look to extrinsic factors to decide the meaning of the disputed phrase "operation of its business." *See Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 469-70 (Mich. 2003) (holding that relevant extrinsic evidence may be considered when interpreting ambiguous language in a contract). AIN and Snap AV must develop the factual record so that the parties' intent in drafting the indemnification provision may be determined. *See Klapp*, 663 N.W.2d at 454 ("Where a written contract is ambiguous, a factual question is presented as to the meaning of its provisions, requiring a factual determination as to the intent of

the parties in entering the contract." (citation omitted)). Thus, dismissing AIN's indemnification claim before discovery is inappropriate.

Snap AV argues that it is a longstanding principle of Michigan law that indemnification provisions are "not intended to be used as a sword or shield in disputes between the contracting parties with respect to the performance of the contract itself." *Miller-Davis CO. v. Ahrens Constr. Inc.*, 817 N.W.2d 609, 619 (Mich. Ct. App. 2012) (citing *Baker Contractor Inc. v. Chris Nelson & Son, Inc.*, 136 N.W.2d 771 (Mich. Ct. App. 1965)). However, this holding merely states that indemnification provisions do not generally cover contract disputes and discourages parties from using them as such if that was not the provision's intent. It does not prohibit parties from contracting for indemnification based on contract performance. In fact, Michigan law recognizes that parties can, through broad language, contract for indemnification liability beyond that arising from third-party claims if such intent can be ascertained. *See Sherman v. DeMaria Bldg. Co., Inc.*, 513 N.W.2d 187, 190 (Mich. Ct. App. 1994) (noting that indemnity contracts containing broad language may be construed to provide indemnification for the indemnitee's own negligence). Michigan law does not bar AIN's interpretation of the indemnification provision. Accordingly, the court will not dismiss AIN's claim for contractual indemnification.

### B. Count IV: Michigan Sales Representative Commission Act

The MSRCA states:

All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due.

Mich. Comp. Laws § 600.2961(4).  Snap AV argues that AIN's MSRCA claim should be dismissed because AIN failed to allege that the Agreement was terminated, and thus the statute has not been triggered.  (Dkt. # 19 at Pg ID 171.)  By its terms, the Agreement "may be terminated by either party if the other party fails to comply with any obligations or responsibilities hereunder and such failure continues for thirty (30) days after written notice."  (Dkt. # 23 at Pg ID 263 ¶ 10.)

Snap AV argues that AIN failed to allege facts sufficient to support its claim that Snap AV terminated the Agreement.  AIN contends that Snap AV's initial notice of breach followed by its second letter at the expiration of the thirty day cure period indicated that Snap AV intended to terminate the Agreement and that Snap AV's subsequent failure to pay commissions demonstrates that Snap AV acted on this intent.  (Dkt. # 23 at Pg ID 244.)  However, inferences regarding intent are not sufficient to terminate a contract.  *See Wells v. 10-X Mfg. Co.*, 609 F.2d 248, 256 (6th Cir. 1979) (citing *Jack Mann Chevrolet Co. v. Assocs. Inv. Co.*, 125 F.2d 778, 784 (6th Cir. 1942).

AIN alleges that, through its second letter, Snap AV wrongfully terminated the Agreement on December 19, 2012.  (Dkt # 14 at Pg ID 74 ¶ 29.)  Snap AV's December 19 letter stated, "Snap AV is no longer willing to continue with the Agreement under its current terms and arrangements.  Accordingly, unless we are able to reach a prompt, effective resolution of this problem, Snap AV *will have no choice but to terminate the Agreement*."  (Dkt. # 23 at Pg ID 277**.**)  "[U]nder the law of Michigan a notice to rescind or terminate a contract must be clear and unambiguous, with the unquestionable purpose of insisting on rescission."  *Wells*, F.2d 248 at 256.  Here, the letter does not explicitly terminate the Agreement, but, by its plain language, explains that Snap AV will

7

terminate if the problem is not resolved. Thus, the letter does not support AIN's contention that Snap AV terminated the Agreement on December 19, 2012.

Snap AV contends that, because it did not terminate the Agreement, AIN had the burden to terminate but failed to do so. AIN alleged that Snap AV materially breached the Agreement by failing to pay AIN commissions owed for December 2012, January 2013, and February 2013. (Dkt. # 14 at Pg ID 75 ¶ 39.) By the terms of the Agreement, this alleged breach first occurred on December 25, 2012. (Dkt. # 23 at Pg ID 267 ¶ 2.) "[W]here one party to a contract commits a material breach, the nonbreaching party is entitled to terminate the contract." *Convergent Grp. Corp. v. Cnty. of Kent*, 266 F. Supp.2d 647, 657-58 (W.D. Mich. 2003) (citing *Lynder v. S.S. Kresge Co.*, 45 N.W.2d 319, 325 (Mich. 1951). Snap AV's alleged material breach gave AIN the right to terminate the contract. Parties may "modify this rule by conditioning the right to terminate for a material breach upon notice and the opportunity to cure." *Id.* at 658 (citing *Lichnovsky v. Ziebart Int'l Corp.*, 324 N.W.2d 732, 737 (Mich. 1982). The Agreement provided for such modification by allowing AIN or Snap AV to terminate after thirty days notice of the other party's failure to comply with "any obligations or responsibilities" of the Agreement. (Dkt. # 23 at Pg ID 263 ¶ 10.) Under the Agreement, AIN had the option to notify Snap AV that it was in breach, wait thirty days, and then, upon Snap AV's failure to cure, terminate the Agreement. AIN does not allege that it followed this procedure. Because the parties agreed to a specific procedure for terminating the Agreement, AIN cannot claim that the Agreement terminated automatically upon Snap AV's alleged breach.

As AIN failed to allege that either it or Snap AV terminated the Agreement, the MSRCA has not been triggered. Therefore, Count IV will be dismissed.

### IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendant's motion to dismiss [Dkt. # 19] is GRANTED IN PART AND DENIED IN PART. It is GRANTED with respect to Count IV, which is DISMISSED. It is DENIED with respect to Count II.

    s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: June 20, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 20, 2013, by electronic and/or ordinary mail.

    s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522